**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3302-19

DR. NADEM SAYEGH,

    Plaintiff-Appellant/
    Cross-Respondent,

v.

JOSIP KALABA,

    Defendant-Respondent/
    Cross-Appellant,

and

MOSES RAMBARRAN,
ESQ., THE RAMBARRAN
LAW FIRM, MAIN STREET
TITLE AND SETTLEMENT
SERVICES, LLC, and A.S.A.
ASSOCIATES,

    Defendants/
    Cross-Respondents,

and

601 W. 4TH STREET FUNDING
ASSOCIATES,

Defendant,

and

UNITY BANK,

    Defendant/Third-Party
    Plaintiff-Cross-Respondent,

v.

601 WEST 14TH STREET, LLC,

    Third-Party Defendant.
_____

Argued May 19, 2021 – Decided July 9, 2021

Before Judges Sumners and Mitterhoff.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Docket No. L-0822-17.

Peter W. Till argued the cause for appellant/cross-respondent (Law Offices of Peter W. Till, attorneys; Peter W. Till and Louis J. Keleher, on the briefs).

John M. Mavroudis argued the cause for respondent/cross-appellant.

PER CURIAM

Following a bench trial, defendant Josip (Joe) Kalaba, fifty percent shareholder of 601 West 14th St. LLC (LLC), was found liable for breach of fiduciary duty, theft, conversion, and fraud for surreptitiously selling property

2

A-3302-19

owned by the LLC without sharing the proceeds with plaintiff Dr. Nadem Sayegh, the remaining fifty percent co-shareholder. Final judgment in the amount of $820,662.16 for compensatory damages was entered in favor of Sayegh; his demand for attorney's fees, costs, and punitive damages was denied.

Sayegh appeals, contending the trial court abused its discretion in denying his demand for punitive damages. Kalaba cross-appeals, arguing the judgment should be vacated because Sayegh did not have standing to sue him individually, and alternatively, Sayegh failed to prove breach of fiduciary duty, theft, conversion, and fraud. For the following reasons, we affirm the judgment's award of compensatory damages, but reverse the denial of punitive damages.

The following evidence was presented at trial, in which Kalaba did not appear because he was in federal prison; Kalaba was represented by counsel but did not present any evidence. Sometime between 2005 and 2013, Sayegh and Kalaba "entered [into] a business relationship where they financed the purchase of two buildings." The second purchase was for 601 West 14th Street in Plainfield ("the property") through a foreclosure sale for which the parties each contributed $100,000 and obtained a $88,000 mortgage from Astoria Federal Savings Bank.[1] To facilitate the purchase, the LLC was formed, listing Sayegh

---

[1] After the purchase, the parties were each refunded $12,000.

as president and Kalaba as secretary. Moses V. Rambarran was retained as counsel to represent the LLC during the foreclosure purchase but was not involved with the LLC's formation and was unaware that Sayegh was an LLC member and its president.

In August 2015, the parties' relationship became strained, and they stopped communicating with each other after Sayegh's medical office was raided by law enforcement. Kalaba was later arrested and charged with stealing Sayegh's prescription pads.

In December 2015, with the LLC still in business and unbeknownst to Sayegh, Kalaba sold the property to A.S.A. Associates for $750,000. The HUD-1 settlement statement prepared by closing agent Main Street Title and Settlement Services, LLC indicated the LLC would be receiving a $400,000 promissory note from A.S.A. Associates and $17,189.19 at the closing. An escrow of $70,000 was set aside for New Jersey Bulk Sales Tax, upon which the State was eventually paid $5,210, with the remaining balance of $64,790 to be wired to 601 West 14th St LLC's TD Bank Account.

Five months later in May 2016, Rambarran, after being informed of Sayegh's interest in the LLC, wrote to Kalaba advising him to cease and desist from taking any steps to sell A.S.A. Associates' promissory note on the property

4

and to assign all note payments to Rambarran's attorney trust account.  Kalaba did not heed Rambarran's advice.

In January 2016, Sayegh learned from Kalaba's former fiancée, who was friends with him and his wife, that Kalaba sold the property.  She testified that upon learning of Kalaba's misdeeds, she asked him, "'Joe, what are you doing?' because these were our best friends, '[w]hat are you doing?'"

Sayegh did not receive any proceeds from the sale of the property or the loan payments made by A.S.A. Associates and sued Kalaba for breach of fiduciary duty, theft, conversion, and fraud; Rambarran and The Rambarran Law Firm for legal malpractice; A.S.A. Associates for collusion and revocation of the deed as to Kalaba; Unity Bank for revocation of a promissory note and mortgage as to Kalaba; and 601 W. 14th Street Funding Associates, A.S.A. Associates, and Main Street Title and Settlement Services for negligence. (Pa40).  All defendants, but for Kalaba, were dismissed with prejudice by court order or by stipulation prior to trial.

Given Kalaba's challenge to the entry of judgment in Sayegh's favor, we first address his cross-appeal contentions.  Kalaba contends that Sayegh did not have standing to bring a direct claim against him because under the Revised Uniform Limited Liability Company Act (RULLCA or Act), N.J.S.A. 42:2C-1

to -94, only a derivate action can be filed to enforce a right of the LLC. Citing Tully v. Mirz, 457 N.J. Super. 114, 123-26 (App. Div. 2018), Kalaba maintains that because Sayegh's claims against him concern the LLC's assets and operations and not individual claims, they are derivative claims which are not enforceable against him. Kalaba contends Sayegh did not prove that he sustained "special injury." Kalaba's contentions are unpersuasive.

Prior to trial, another court denied Kalaba's motion to dismiss for lack of standing. In its statement of reasons, the court ruled:

> [Sayegh] has standing to sue. A shareholder may maintain a direct action against an LLC if he or she is able to show a special injury. Strasenburgh v. Straubmuller, 146 N.J. 527 (1996). A special injury is an injury which is separate and distinct from that suffered by other shareholders. Id. at 551. [Sayegh] is the only shareholder that was harmed by Kalaba's alleged conduct. His injury is special and unique to himself. Therefore, he has standing to bring a claim as an individual.

Based on our de novo review, we agree with the court's decision. See People for Open Gov't v. Roberts, 397 N.J. Super. 502, 508 (App. Div. 2008) (stating the issue of standing is a matter of law that we review de novo); see also Manalapan Realty, L.P. v. Twp. Comm. of Twp. of Manalapan, 140 N.J. 366, 378 (1995) ("A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference.").

6

Under the RULLCA, an LLC member may maintain a derivative action to enforce a right of an LLC; however, the Act prohibits its members from asserting claims in a direct action that belong to the entity. N.J.S.A. 42:2C-1 to -94. If, however, a particular shareholder suffers a unique harm that is different from the injuries suffered by the other shareholders, the "special injury" exception may apply, permitting a member to bring a direct action. Delray Holding, LLC v. Sofia Design & Dev. at S. Brunswick, LLC, 439 N.J. Super. 502, 510 (App. Div. 2015) (citing Pepe v. Gen. Motors Acceptance Corp., 254 N.J. Super. 662, 666 (App. Div. 1992)). "A special injury exists 'where there is a wrong suffered by [a] plaintiff that was not suffered by all stockholders generally or where the wrong involves a contractual right of stockholders, such as the right to vote.'" Ibid. (alteration in original) (quoting Strasenburgh v. Straubmuller, 146 N.J. 527, 550 (1996)).

Kalaba's reliance on Tully is misplaced. In Tully, the plaintiff attempted to recover funds from the defendant directly, as an individual, "despite the fact that the injury he claim[ed] appear[ed] to be suffered by [the corporation]." 457 N.J. Super. at 122. Here, the LLC did not suffer harm as the property was sold to another party with the proceeds and a promissory note going to the LLC. However, Kalaba kept the proceeds and note payments from Sayegh. Because

7

Sayegh was the only shareholder harmed, he suffered an injury special and unique to himself. Sayegh had "a sufficient stake in the outcome of the litigation, a real adverseness with respect to the subject matter, and a substantial likelihood that [he would] suffer harm in the event of an unfavorable decision." In re Camden Cnty, 170 N.J. 439, 449 (2002). It was therefore correctly determined that Sayegh had standing to sue Kalaba.

Kalaba next argues that Sayegh failed to state a cause of action for theft and conversion as he did not prove that the sale of the property generated positive cash flow and that he had a right to receive a return of his initial investment, the proceeds of the refinance, or the proceeds of sales transactions. (Db14). Kalaba asserts Sayegh did not consider the costs of repair, restoration, and payment of municipal liens, back taxes, etc. and whether he was entitled to a profit from the sale. (Db15). As for his legal fraud claim, Kalaba asserts Sayegh did not establish by clear and convincing evidence of: (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by Kalaba of its falsity; (3) an intention that Sayegh rely on it; (4) reasonable reliance thereon by Sayegh; and (5) resulting harm. See Jewish Ctr. of Sussex Cnty. v. Whale, 86 N.J. 619, 624 (App. Div. 1981). And with respect to the

8

alleged breach of fiduciary duty, Kalaba contends there was insufficient proof of Sayegh's interest in the LLC and that he took LLC money from Sayegh.

Kalaba's contentions are devoid of any merit to warrant extensive discussion in a written opinion. R. 2:11-3(e)(1)(E). There is no basis to disturb the court's credibility determinations or its factual findings that support its judgment against Kalaba for compensatory damages. See Cesare v. Cesare, 154 N.J. 394, 412 (1998) (holding appellate review owes deference to the court's evaluation of witness credibility and will not upset its factual findings so long as they are supported by substantial credible evidence). Considering the facts as the court found them, its legal conclusions on Kalaba's liability and damages are unassailable. The credible evidence pointed to Kalaba's deceitful transfer of the LCC's assets to his sole benefit, which warranted the compensatory damages judgment in favor of Sayegh.

Lastly, we pivot to Sayegh's appeal regarding punitive damages. The court decided "[Sayegh] had not met the standard required to support an award of punitive damages. [Kalaba's] conduct did not rise to the level of willful or wanton disregard required for entitlement to punitive damages." In this ruling, we part company with the court's determination.

9

Punitive damages are appropriate "as punishment or deterrence for particularly egregious conduct." Nappe v. Anschelewitz, Barr, Ansell & Bonello, 97 N.J. 37, 48 (1984); see also Maudsley v. State, 357 N.J. Super. 560, 590 (App. Div. 2003). There "must [be] pro[of] by clear and convincing evidence [of] a 'deliberate act or omission with knowledge of a high degree of probability of harm and reckless indifference to the consequences.'" Smith v. Whitaker, 160 N.J. 221, 242 (1999) (quoting Berg v. Reaction Motors Div., Thiokol Chem. Corp., 37 N.J. 396, 414 (1962)). We will only disturb a trial court's decision on whether to award punitive damages where there is an abuse of discretion, Maudsley, 357 N.J. Super. at 590, which can be shown if the decision "was not premised upon consideration of all relevant factors, . . . was based upon consideration of irrelevant or inappropriate factors, or . . amount[s] to a clear error in judgment," Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002) (quoting State v. Baynes, 148 N.J. 434, 444 (1997)).

The trial court mistakenly applied its discretion in rejecting Sayegh's punitive damages claim. The court did not take into consideration the same facts that culminated in its compensatory damages award, which we have upheld for the reasons noted above. Sayegh is entitled to punitive damages based on the clear and convincing evidence that Kalaba acted with wanton and willful

10

disregard of Sayegh's interest in the LLC when he engineered the sale of the property without Sayegh's knowledge, kept all the proceeds with no regard to Sayegh's ownership interest, and ignored Rambarran's advice to cease his fraudulent activities. Accordingly, a remand is necessary for the court to determine the amount of punitive damages Sayegh is entitled to receive. We take no position as to the amount of punitive damages that are appropriate.

Affirmed in part and reversed and remanded in part consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3302-19